UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

POUGHKEEPSIE SUPERMARKET CORP. d/b/a/
MARKET FRESH, individually and on behalf of all others
similarly situated,

                            Plaintiff,

          - against -

COUNTY OF DUTCHESS, NEW YORK,

                            Defendant.

14-CV-1702 (CS)

**OPINION & ORDER**

---

Seibel, J.

      Before the Court is Defendant's Motion to Dismiss Plaintiff's Second Amended Complaint ("SAC"). (Doc. 16.) For the reasons stated below, the Motion is GRANTED.

**I.   Background**

      A.   Facts

      For purposes of this Motion, the Court accepts as true the facts (but not the conclusions) alleged by Plaintiff in the SAC.

      Plaintiff Poughkeepsie Supermarket Corp. (d/b/a Market Fresh) has operated a retail food establishment ("the store") in the City of Poughkeepsie since 2011. (SAC ¶ 5.) In 1991, Defendant County of Dutchess enacted Local Law No. 9, which was thereafter amended by Local Law No. 3 of 1998 and Local Law No. 2 of 2011. (SAC ¶ 6.) Under "Legislative Intent," Local Law No. 9 states:

> This Legislature hereby finds and determines that the Consumers in Dutchess County are entitled to clear information, setting forth the prices of consumer commodities which they purchase from retail supermarkets. A clear, easily-enforceable item-pricing statute will promote the Dutchess County consumers' right to all reasonable information in order that these consumers are able to make informed choices about their purchases.

1

> The Legislature also finds and declares that there is technology utilizing a laser scanning device offering numerous efficiencies and economies to the operation of the retail food industry. The Legislature further finds that price marking constitutes an indispensable [*sic*] ingredient to a consumer's right to all reasonable information in order to make an informed purchase choice.
>
> ***The purpose of this Legislation is to require item pricing to protect the interest of the Consumer public, and to promote useful technology by permitting continued testing and development of the UNIVERSAL PRODUCT CODE CHECK-OUT SYSTEM without the removal of ITEM PRICE.***

(*Id.* ¶ 6) (emphasis in original). In relevant part, Local Law No. 9 provides that a "retail food establishment in Dutchess County which sells, offers for sale or exposes for sale a consumer commodity shall clearly disclose on each item, the selling price of said consumer commodity. The selling price may be shown by stamp, tag, label, or otherwise, market [*sic*] in Arabic numeral on each item." (*Id.* ¶ 6.) "Retail food establishment" is defined, in pertinent part, as "a store within a general retail merchandise store selling primarily food at retail for off-premises consumption, provided that such store had annual gross sales in the previous calendar year of at least two million dollars." (*Id.*) Under Local Law No. 9, non-compliance is "punishable by the payment of a Civil Penalty in the sum of not more than one hundred dollars for each such violation, with a maximum fine of SEVEN THOUSAND FIVE HUNDRED dollars per inspection." (*Id.*) (emphasis in original).

Since opening in 2011, the store has had gross annual sales in excess of two million dollars and therefore is subject to Local Law No. 9. (*Id.* ¶ 7.) The store has been inspected for compliance with Local Law No. 9 several times, and each time has been found in non-compliance. (*Id.* ¶¶ 8-11.)[1]

---

[1] At the initial inspection for compliance with Local Law No. 9, in 2011, the County issued an order directing Plaintiff to "correct immediately." (SAC ¶ 8.) On June 14, 2012, at the second inspection, the store was fined $5,000. (*Id.* ¶ 9.) On August 20, 2013 and December 2, 2013, the store was fined $7,500. (*Id.* ¶¶ 10-11)

2

Plaintiff points to several mechanisms, aside from item price labels, that provide consumers with information regarding the cost of products in retail food establishments. (*See id.* ¶ 20.) First, Plaintiff alleges that in the years since Local Law No. 9 was enacted, Computer Assisted Checkout Systems ("CACOS") have become an "accurate and industry-accepted" mechanism for pricing consumer goods. (*Id.* ¶ 15.) Second, shelf tags, which are state-mandated, must list an item's unit price, retail price, and bar code. (*Id.* ¶ 19.) Finally, grocers can make price scanners available throughout their stores, although Plaintiff does not state whether it does so, and County inspectors can spot-check the accuracy of a store's CACOS. (*Id.* ¶ 20.)

As a result of Local Law No. 9, Plaintiff must change the label on every individual item if it wishes to change the price of a product. (*Id.* ¶ 18.) This creates a burden on Plaintiff's ability to hold promotional sales or otherwise change prices. (*Id.*) For example, when Plaintiff wishes to hold a single-day sale, it must – if it wishes to comply with Local Law No. 9 – change the label on every sale item, and then change the labels back the following day. (*Id.*) Plaintiff estimates that compliance with Local Law No. 9 will cost approximately $45,000 annually. (*Id.*) Plaintiff alleges that the item price requirement "substantially increase[s] the prices that must be charged to consumers in order to cover the costs incurred in complying with" Local Law No. 9, and "prevent[s] or restrain[s] promotional sales and thereby substantially prevent[s] item price reductions." (*Id.* ¶ 25.)

Plaintiff further alleges that the County's "asserted or purported interests" in Local Law No. 9 are pretextual, and that the County's real reasons for the law's continued enforcement are "(1) the raising of revenue for the County through the imposition of fines for noncompliance with the Local Law's price marking requirements and/or (2) the creation of jobs by coercing

3

retail food establishments to hire additional employees to attempt to comply with" Local Law No. 9.  (*Id.* ¶ 26.)

    B.  Procedural History

Plaintiff sues under 42 U.S.C. § 1983 for deprivations of rights, privileges, and immunities secured by the First Amendment of the U.S. Constitution, based on Defendant's item price labeling requirement.  (*Id.* ¶ 3.)  Plaintiff requests declaratory and injunctive relief and compensatory damages.  (*Id.*)  Defendant has moved to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim on which relief can be granted.  (Doc. 20.)

**II.**  **Discussion**

    A.  Legal Standard

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Twombly*, 550 U.S. at 555 (alteration, citations, and internal quotation marks omitted).  While Federal Rule of Civil Procedure 8 "marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, . . . it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions."  *Iqbal*, 556 U.S. at 678-79.

4

In considering whether a complaint states a claim upon which relief can be granted, the court "begin[s] by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth," and then determines whether the remaining well-pleaded factual allegations, accepted as true, "plausibly give rise to an entitlement to relief." *Id.* at 679. Deciding whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'shown' – 'that the pleader is entitled to relief.'" *Id.* (alteration omitted) (quoting Fed. R. Civ. P. 8(a)(2)).

B.  Documents that May Be Considered

When deciding a motion to dismiss, ordinarily the court's "review is limited to the facts as asserted within the four corners of the complaint, the documents attached to the complaint as exhibits, and any documents incorporated in the complaint by reference." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 191 (2d Cir. 2007); *accord Faulkner v. Beer*, 463 F.3d 130, 134 (2d Cir. 2006). But the court can also consider documents where the complaint relies heavily on their terms and effect – that is, documents "integral" to the complaint. *See Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002). Such reliance "is a necessary prerequisite to the court's consideration of the document on a dismissal motion; mere notice or possession is not enough." *Id*.

Here, Defendant's counsel attaches several documents to his affidavit. (Doc. 21.) It is untenable to argue, and Defendant does not actually attempt to do so, that any of the following documents are "integral" to the SAC: a letter of notification regarding an April 2014 fine not mentioned in the SAC, (Ex. B); the store's promotional flyers, (Ex. C); and various responses to

5

the potential repeal of Local Law No. 9, (Exs. D, E).  With the exception of Exhibit A, which is Plaintiff's SAC, none of the attached documents may be considered at this stage in the case.

    C. First Amendment Claim

        a. Applicability of First Amendment

As an initial matter, it is not clear to the Court that this case involves speech at all.  "As a general matter, [Local Law No. 9] regulates conduct, not speech.  It affects what [supermarkets] must *do* . . . not what they may or may not *say*."  *Rumsfield v. Forum for Acad. & Institutional Rights, Inc.*, 547 U.S. 47, 60 (2006) (emphasis in original).  It "does not dictate the content of the speech at all."  *Id.* at 62.  Nor does it involve conduct with an expressive nature, such as flag-burning.  *See id.* at 65-66.  Accordingly, this Court is dubious that the First Amendment applies to Local Law No. 9.  Because Defendant has not raised this issue, however, the Court considers the statute under the First Amendment in an excess of caution.

        b. Level of Scrutiny

Before deciding whether Plaintiff states a plausible constitutional challenge against Local Law No. 9, this Court must determine the level of scrutiny to apply.  It is well-settled that commercial speech is afforded protection under the First Amendment of the U.S. Constitution.  Courts have acknowledged, however, "the 'commonsense' distinction between speech proposing a commercial transaction, which occurs in an area traditionally subject to government regulation, and other varieties of speech."  *Cent. Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n*, 447 U.S. 557, 562 (1980) (internal quotation marks omitted).  "The Constitution therefore accords a lesser protection to commercial speech than to other constitutionally guaranteed expression."  *Id.* at 562-63.

Additionally, not all statutes concerning commercial speech are reviewed with the same level of scrutiny. "Commercial disclosure requirements are treated differently from restrictions on commercial speech because mandated disclosure of accurate, factual, commercial information does not offend the core First Amendment values of promoting efficient exchange of information or protecting individual liberty interests." *Nat'l Elec. Mfrs. Ass'n v. Sorrell*, 272 F.3d 104, 113-14 (2d Cir. 2001). Indeed, "[p]rotection of the robust and free flow of accurate information is the principal First Amendment justification for protecting commercial speech, and requiring disclosure of truthful information promotes that goal." *Id.* Accordingly, a higher level of scrutiny is applied to commercial speech restrictions than to compelled commercial speech.

Under *Central Hudson*, restrictions on commercial speech are entitled to intermediate scrutiny. 447 U.S. at 564; *id.* at 573 (Blackmun, J., concurring) (stating explicitly that *Central Hudson* provides for intermediate scrutiny). Disclosure requirements, on the other hand, generally must only be "reasonably related to the State's interest in preventing deception of consumers," *Zauderer v. Office of Disciplinary Counsel*, 471 U.S. 626, 651 (1985), or in increasing consumer awareness, *Sorrell*, 272 F.3d at 115. Circuit courts have referred to the standard articulated in *Zauderer* as rational basis review. *See, e.g.*, *Conn. Bar Ass'n v. United States*, 620 F.3d 81, 92 (2d Cir. 2010); *N.Y. State Rest. Ass'n v. N.Y.C. Bd. of Health*, 556 F.3d 114, 132 (2d Cir. 2009) (*NYSRA*).

Departing from the general categorization articulated in *Central Hudson* and *Zauderer,* a limited number of Second Circuit cases have applied intermediate scrutiny to disclosure requirements. These cases, however, are few and narrow. For example, in *Safelite Group, Inc. v. Jepsen*, 764 F.3d 258, 264 (2d Cir. 2014), a disclosure requirement was reviewed under intermediate scrutiny where an insurance claims management company was prohibited from

7

recommending its affiliate auto-glass repair company unless it also disclosed the name of a competitor repair company. The Second Circuit found that intermediate scrutiny applied because "the disclosure required here compels speech that goes beyond the speaker's own product or service," and because "[t]he speech requirement here does more to inhibit First Amendment values than to advance them." *Id.* In another such case, *International Dairy Foods Ass'n v. Amestoy*, 92 F.3d 67, 72-73 (2d Cir. 1996), intermediate scrutiny was used to review a disclosure requirement that compelled dairy producers to disclose when a product contained dairy derived from cows treated with growth hormones. The decision in *Amestoy*, however, was "expressly limited to cases in which a state disclosure requirement is supported by no interest other than the gratification of 'consumer curiosity.'" *Sorrell*, 272 F.3d at 115 n.6 (quoting *Amestoy*, 92 F.3d at 73).[2]

      This case involves neither a mandated disclosure about something other than the speaker's own products, nor information to be provided for no reason other than curiosity. That there is nothing exceptional about this case that would avoid application of the usual rule that disclosure requirements are reviewed under the rational basis test is confirmed by *NYSRA*. There, the Second Circuit applied rational basis review to a challenged law requiring certain food establishments to include calories on their menus. 556 F.3d at 131-34. While the plaintiff argued the law should undergo intermediate scrutiny, the Second Circuit disagreed, finding that *Zauderer* was the proper precedent because the law in question required disclosure of purely

---

[2] Plaintiff also cites *Hayes v. New York Attorney Grievance Committee*, 672 F.3d 158 (2d Cir. 2012), to support the notion that Local Law No. 9 should be reviewed under intermediate scrutiny. While *Hayes* provides no explanation as to why *Central Hudson*, instead of *Zauderer*, was followed, this Court finds that *Hayes* is not analogous to this case. In *Hayes*, the attorney plaintiff was explicitly prohibited from listing his certifications unless he included several disclaimers. *Id.* at 161-62. It thus involved forcing "one speaker to host or accommodate another speaker's message." *Rumsfeld*, 547 U.S. at 63. Local Law No. 9 does not require anything other than the speaker's own purely factual, uncontroversial, accurate commercial speech. *See Sorrell*, 272 F.3d at 113. Plaintiff's complaint here is not based on anything it is prohibited from saying or forced to say, but rather on incidental costs arising from the law's requirements, and therefore is not similar to the facts of *Hayes*.

factual information that served a purpose greater than consumer curiosity.  *See id.* at 132-34.  As the court in *Sorrell* explained, *Zauderer* is properly applied to a disclosure requirement where "the statute's goal [is not] inconsistent with the policies underlying First Amendment protection of commercial speech . . . and the reasons supporting the distinction between compelled and restricted commercial speech."  *Sorrell*, 272 F.3d at 115.

   Plaintiff argues that the law should be reviewed under *Central Hudson* because the item price disclosure requirements "restrain, burden and interfere with plaintiff's ability to place items on promotional sales . . . and to otherwise change the prices of items when plaintiff deems such changes to be appropriate, necessary or desirable."  (SAC ¶ 18.)  To support this notion, Plaintiff points to the relabeling that must occur every time the store wishes to hold a sale.  (*Id.*)  But this incidental consequence of Local Law No. 9 does not change the law's nature as one commanding only disclosure of "purely factual and uncontroversial information."  *Zauderer*, 471 U.S. at 651.  Plaintiff does not allege, for instance, that Local Law No. 9 forbids promotional sales, or even makes running them prohibitively expensive.  The higher cost of running promotional sales does not sufficiently implicate the core of the First Amendment to plausibly justify *Central Hudson* review for a disclosure requirement.  Describing the law as restricting speech – when it does no more than compel disclosure and thereby incidentally make Plaintiff's operations a bit more burdensome – is a "formulaic recitation," *Twombly*, 550 U.S. at 555, that does not render it plausible that intermediate scrutiny applies.  Accordingly, rational basis, not intermediate scrutiny, is the proper standard to apply in this case.

   c. <u>Rational Basis Review</u>

   The Court now turns to the question of whether Plaintiff has plausibly pleaded that Local Law No. 9 cannot survive rational basis review.  The Supreme Court has "recognize[d] that

unjustified or unduly burdensome disclosure requirements might offend the First Amendment by chilling protected commercial speech," but has held that the speaker's First Amendment rights are adequately protected "as long as disclosure requirements are reasonably related to the State's interest in preventing deception of consumers," *Zauderer*, 471 U.S. at 651, or increasing consumer awareness, *Sorrell*, 272 F.3d at 115.  It is self-evident that it is easier to locate the price on an item, rather than on a shelf (where tags may fall off or when items may be mis-shelved away from their corresponding tags) or via a scanner (which may be distant from the shelf where the consumer wishes to make his or her buying decision), and that without a sticker on the item it is more difficult to monitor the CACOS to see if it accurately reflects the product's price.

Plaintiff argues that Local Law No. 9 fails rational basis review because:  (1) item pricing is no longer needed to serve the law's stated purpose, in light of other available sources of price information; (2) the stated legislative intent of the statute is now pretextual; and (3) compliance with the law is burdensome.   Local Law No. 9 states that the law "will promote the Dutchess County consumers' right to all reasonable information in order that these consumers are able to make informed choices about their purchases," and that even in light of available technology "price marking constitutes an indispensible [*sic*] ingredient to a consumer's right to all reasonable information in order to make an informed purchase choice."  (SAC ¶ 6.)[3] Individually pricing products in retail food establishments is, as discussed above, reasonably related to the objectives of protecting consumers' interest in obtaining accurate, accessible price

---

[3] The Legislative Intent section lists a third reason for the law:

> ***The purpose of this Legislation is to require item pricing to protect the interest of the Consumer public, and to promote useful technology by permitting continued testing and development of the UNIVERSAL PRODUCT CODE CHECK-OUT SYSTEM without the removal of ITEM PRICE***.

(SAC ¶ 6) (emphasis in original).  While the Court understands Plaintiff's argument that this paragraph demonstrates that Local Law No. 9 was meant for a time when CACOS was in development, Plaintiff does not plausibly refute that the law has a rational basis, regardless of this paragraph.

information and facilitating informed shopping.  While conceding that Local Law No. 9 had a rational basis at the time it was enacted, Plaintiff argues that item pricing is no longer reasonably related to these objectives because there are other available means of disseminating price information.  This argument fails because Plaintiff does not provide a plausible explanation as to why CACOS and shelf price labels preclude the item pricing from serving its stated purpose.  Indeed, the Legislative Intent section accounts for the presence of a CACOS-like product, and reasonably states that item pricing still provides an important additional tool for customers.  Moreover, "[b]ecause the First Amendment interests implicated by disclosure requirements are substantially weaker than those at stake when speech is actually suppressed, [it is not] appropriate to strike down such requirements merely because other possible means by which the State might achieve its purposes can be hypothesized."  *Zauderer*, 471 U.S. at 651 n.14.  Accordingly, Plaintiff has not plausibly alleged that there is no longer a rational basis for requiring item pricing.

Similarly, Plaintiff argues that the legislative intent is now pretextual, and that the true reason for the continued enforcement of the law is to collect penalty payments and force retail food stores to employ more people.  (SAC ¶ 26.)  This argument does not help Plaintiff to state a claim.  First, while Plaintiff may believe the statute no longer serves any useful purpose, Plaintiff provides no facts rendering plausible the conclusion that the County legislature shares that belief.  Second, Plaintiff in advancing this argument focuses only on the stated legislative purpose of permitting testing and development of CACOS, and ignores the stated legislative purpose of protecting the consuming public by providing all reasonable information at the time of a purchase choice (which takes place in the aisles, not at the register).  Even if the former purpose has been overtaken by events, the latter has not.  Third, Plaintiff provides no authority, and the

Court has found none, for the proposition that in conducting First Amendment rational-basis review, a court should disregard the legislature's initial, rational intent and instead inquire whether the passage of time has rendered its reasoning less powerful.  Indeed, if a statute that had a rational basis for its enactment were subject to challenge and possible judicial invalidation whenever a plaintiff, or a judge, believes it has outlived its usefulness, that would be the sort of legislation from the bench that is widely and rightfully condemned.  Once a law is enacted and passes constitutional muster, it is the political process that must change it if its costs no longer exceed its benefits, at least where, as here, its continued enforcement is not arbitrary or irrational.

Plaintiff also argues that Local Law No. 9 is unduly burdensome based on the resources and labor that must be expended to comply.  (*Id.* ¶ 17.)  That the law requires some effort by Plaintiff to come into compliance does not negate the rationality of the law.  The government is allowed to impose minor burdens on commercial speech.  *See id.* at 651.  Indeed, compliance with most compelled disclosure laws will logically entail some expense.  As Plaintiff has not alleged anything extraordinary about the burden of complying with Local Law No. 9, any incidental costs of labeling do not impact the finding of a rational basis.

### III. Conclusion

For the reasons stated above, Defendant's Motion to Dismiss Plaintiff's Second Amended Complaint is GRANTED.  The Clerk of Court is respectfully directed to terminate the pending motion, (Doc. 20), and close the case.

**SO ORDERED.**

Dated: October 15, 2015
      White Plains, New York

                                                   _____
                                                     CATHY SEIBEL, U.S.D.J.